UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES OF AMERICA, | § | |
| --- | --- | --- |
| | § | |
| v. | § | CRIMINAL NO. 3:19-CR-0462-M |
| | § | |
| NILESH PATEL (01). | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Objection to Magistrate's Detention Order and Request for the District Court to Review Same (Doc. 36), filed on January 23, 2020.[1] Upon reviewing the evidence and conducting a hearing on the matter, the Court denied Defendant Patel's motion and remanded him to custody pending trial. This opinion provides additional reasoning for the Court's decision.

## I.

## BACKGROUND

*A.    Procedural Background*

On September 11, 2019, Defendant Nilesh ("Neil") Patel was indicted on healthcare fraud charges. *See* Doc. 1, Indictment. He was ordered released pending trial, subject to specified conditions, including that he "not violate federal, state, or local law while on release." Doc. 12, Order Setting Conditions of Release, 1. Nonetheless, on January 3, 2020, Defendant Patel's probation officer informed the magistrate judge assigned to Defendant Patel's case that on November 17, 2019, Defendant Patel was arrested for an Assault Causing Bodily Injury, a state misdemeanor. *See* Doc.

---

[1] The Court construes this as a "motion for revocation or amendment" of the magistrate judge's detention order. *See* 18 U.S.C. § 3145(b).

28, Report of a Violation, 1; TEX. PENAL CODE § 22.01(b). Consequently, the magistrate judge held a hearing to address the violation, and she ultimately revoked Defendant Patel's pretrial conditions of release and ordered Defendant Patel detained pending trial. *See* Doc. 32, Detention Order, 4. Thereafter, on January 23, 2020, Defendant Patel filed his motion (Doc. 36) seeking review of the detention order. On February 5, 2020, the Government filed a response (Doc. 37). Further, on February 7, 2020, this Court held a hearing on the matter, during which the parties presented evidence and testimony. At the conclusion of the hearing, the Court denied Defendant Patel's motion and remanded him to custody. This opinion sets forth additional reasoning from the Court.[2]

B. *Factual Background*

Before turning to the merits of Defendant Patel's motion, the Court relays the events giving rise to the magistrate judge's revocation of Defendant Patel's pretrial release.[3]

During the early hours of November 17, 2019, the police responded to a 911 call from Defendant Patel's residence. *See* Gov't's Ex. 3. Defendant Patel's wife, Kortlynn Patel, sought the police's intervention in an altercation between her and Defendant Patel. Kortlynn testified that, leading up to this altercation, she and Defendant Patel had been arguing, and she had suggested Defendant Patel stay the night at his son's residence. When Kortlynn found out that Defendant Patel would be coming home that night, rather than staying with his son, Kortlynn decided to leave the home for a while. Further, she asked another adult living in their home, Chelsea Baker, to inform

---

[2] The undersigned is hearing this matter as the duty judge. *See* N.D. Tex. Special Order No. 5-514.

[3] The Court relies upon both the evidence presented to the magistrate judge, as well as the evidence presented to this Court. This evidence is summarized below.

Kortlynn when Defendant Patel had arrived home and gone to sleep. When Kortlynn later returned home, she discovered that Defendant Patel had damaged and destroyed their Christmas decorations. Planning to clean them up before her children awoke, Kortlynn went to sleep.

But after sleeping for about forty-five minutes, Kortlynn awoke to Defendant Patel screaming at her and pulling her out of bed. Kortlynn testified that Defendant Patel was intoxicated, and he was insisting that she leave the home. In the course of pulling her out of bed, Defendant Patel poked Kortlynn in the eye, and he eventually pinned her against the wall. Though she testified that he was not grabbing her arms, she also testified that she was backed against the wall. At this point, she instructed Chelsea Baker to call the police.

When police arrived at Defendant Patel's residence, they observed the smashed and broken Christmas decor both in the front yard and inside the home. When responding Officer Olivarez saw Kortlynn, she was shaking, looked afraid, and her right eye appeared swollen and bloodshot. She told Officer Olivarez that while this was the first time she had ever called the police following an altercation with Defendant Patel, this was not the first physical altercation between the couple. But Kortlynn did not provide Officer Olivarez with any specific instances or details of past violence. At the hearing before this Court, Kortlynn denied that Defendant Patel had ever been violent with her prior to the incident in question, and she stated that she was not afraid of him. Nevertheless, following the incident, she obtained an emergency protective order so that she could figure out her next steps and see how Defendant Patel conducted himself following the altercation.

Kortlynn also testified that leading up to this incident, she and Defendant Patel had a stressful weekend. The morning before the incident, in fact, Kortlynn had discovered that Defendant Patel broke one of her car windows after a fight the night before. When Kortlynn asked why he did

this, he stated, "because I love you. That's how much I love you, I guess . . . I love you so much I'll break shit . . . I go fucking crazy . . . if you'd[4] have been home last night, Oh God, no telling what I would have done . . . I'm fucking ignorant, I'm fucking crazy . . . ." Gov't's Ex. 3, Supplement, 1 (ellipses in original).

## II.

## LEGAL STANDARD

Under 18 U.S.C. § 3148(a), "[a] person who has been released [pending trial], and who has violated a condition of his release, is subject to a revocation of release [and] an order of detention . . . ." When the condition violated is the prohibition on "commit[ting] a Federal, State, or local, crime during the period of release," the person "shall be brought before the judicial officer who ordered the release . . . ." *Id.* § 3148(b).

"The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer" concludes that there is "probable cause to believe that the person has committed a . . . crime while on release," and that either: (1) "there is no condition or combination of conditions of release that will assure that the person will not . . . pose a danger to the safety of any other person or the community"; or (2) "the person is unlikely to abide by any condition or combination of conditions of release." *Id.* If the judicial officer finds there is "probable cause to believe that, while on release, the person committed a . . . felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other

---

[4] While the police officers indicate, based on a recording, that Defendant Patel was stating what he would have done if Kortlynn had been home that night, see Gov't's Ex. 3, Supplement, 1, Kortlynn testified that Defendant Patel was stating what he would have done if Kortlynn had *not* come home that night. This difference is immaterial to the Court's analysis.

person or the community." *Id.*

Further, pursuant to 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." "A district court reviews a pretrial detention order *de novo* and makes an independent determination of the pretrial detention or the proper conditions for release." *United States v. Maxwell*, 2019 WL 652460, at *2 (N.D. Tex. Feb. 15, 2019) (citations omitted). To conduct its *de novo* review, the district court may review the record developed before the magistrate judge. *United States v. Karriem*, 2006 WL 1489484, at *2 (N.D. Tex. May 18, 2006).

### III.

### ANALYSIS

The Court concludes that the magistrate judge properly revoked Defendant Patel's order of pretrial release under 18 U.S.C. § 3148. As a preliminary matter, the Court acknowledges that the magistrate judge improperly invoked the statutory rebuttable presumption that applies only when a defendant commits a felony offense while on pretrial release—not a misdemeanor. *See* Doc. 32, Detention Order, 3; 18 U.S.C. § 3148(b). Additionally, Defendant Patel concedes that there is probable cause to believe that he committed a misdemeanor offense under state law. Doc. 36, Obj. to Magistrate's Detention Order, 10.

Thus, the only issue for this Court to decide is whether, in the absence of the rebuttable presumption, either: (1) "there is no condition or combination of conditions of release that will assure that [Patel] will not . . . pose a danger to the safety of any other person or the community "; or (2) "[Patel] is unlikely to abide by any condition or combination of conditions of release." *See* 18 U.S.C. § 3148(b).

The Court holds that there is not a condition, nor a combination of conditions, that will ensure that Defendant Patel does not pose a danger to his wife's safety. At the hearing on this matter, the Court heard sufficient evidence to demonstrate that Defendant Patel poses a danger to the safety of his wife, and there are not pretrial conditions to prevent this danger.

Specifically, the Court heard testimony from Kortlynn Patel, explaining that two nights prior to Defendant Patel's assault arrest, she and Defendant Patel got in an argument, and the next morning, she found that he had broken her car window. In explaining why he broke the car window, Defendant Patel stated, "because I love you. That's how much I love you, I guess . . . I love you so much I'll break shit . . . I go fucking crazy . . . if you'd have been home last night, Oh God, no telling what I would have done . . . I'm fucking ignorant, I'm fucking crazy . . . ." Gov't's Ex. 3, Supplement, 1 (ellipses in original). Further, that same night, Defendant Patel destroyed the Christmas decorations in their home, stringing them out throughout front yard, entryway, and living room. And hours after Defendant Patel destroyed the decorations, Defendant Patel woke Kortlynn up by screaming at her and pulling her out of bed. He proceeded to pin her against the wall. At some point, Defendant Patel poked Kortlynn in the eye, though it is unclear based on Kortlynn's testimony how this happened.

Additionally, Kortlynn indicated to the responding officers that Defendant Patel had been violent with her in the past, though she did not provide any specific details of violence. Ultimately, Kortlynn decided to obtain an emergency protective order against Defendant Patel.

Under these circumstances, the Court finds that there is no condition or combination of conditions that can ensure Kortlynn Patel's safety pending Defendant Patel's trial. While the Court recognizes that the incident in question was likely alcohol-induced, and that Defendant Patel has

consistently attended alcohol treatment programs since that night, the Court recognizes that such treatment does not always prevent relapses. Moreover, the Court's role is not to make a decision based solely on Defendant Patel's well-being; instead, the Court must analyze whether "there is [a] condition or combination of conditions of release that will assure that [Patel] will not . . . pose a danger to the safety of any other person or the community." *See* 18 U.S.C. § 3148(b). Because the Court concludes that there are not such pretrial conditions, the Court agrees with the magistrate judge's determination and **DENIES** Defendant Patel's motion.

## IV.

## CONCLUSION

Based on the foregoing reasons, the Court agrees with the magistrate judge's conclusion that Defendant Patel should be detained pending his trial. Thus, the Court **DENIES** Defendant Patel's motion (Doc. 36).

**SO ORDERED.**

**SIGNED: February 10, 2020.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE